## HIGGINBOTHAM et al. v. MOLLOHAN.
### No. 3085.

Court of Civil Appeals of Texas. El Paso.
Nov. 15, 1934.

Rehearing Denied Dec. 6, 1934.

Read, Lowrance & .Bates, of Dallas, and J. W. Morrow, of El Paso, for appellants.

Lea & Edwards, of El Paso, for appellee.

PELPHREY, Chief Justice.

This case was instituted against appellants and others who were later dismissed from the case. The appeal here is from an order of the trial court overruling certain pleas of privilege.

Appellants requested the court to file findings of fact and conclusions of law, which the court did, as follows:

### "Findings of Fact.

"The transactions involved in this litigation had their inception in a contract between J. M. Higginbotham and R. W. Higginbotham, on one part, and H. D. Mollohan on the other, dated the 10th day of December, 1924. This contract appears on pages 159 to 161 of the statement of facts and by reference is made a part of these findings.

"The business contemplated to be pursued under said contract was conducted thereunder until the 23rd day of January, 1926, at which time the contract aforesaid was superseded by another contract; this contract is dated the 23rd day of January, 1926. Same appears on pages 162 and 163, of the Statement of Facts, and by reference is made a part hereof.

"In the prosecution of the business contemplated by the two contracts a great many cattle were placed upon said lands, also some horses and mules, some wagons and farming implements.

"On the 9th day of March, 1927, another written contract was entered into between R. W. and J. M. Higginbotham on one part and H. D. Mollohan on·the other, which is not signed by J. M. Higginbotham, but he had notice of same and acquiesced therein. The gist of this agreement was that Mollohan was to deliver a minimum of nine thousand branded cattle, and two thousand or more unbranded calves, at a point of delivery necessary to bring same into the United States and to pay all expenses of all permits and privileges required by any and all Mexican authorities; the freight to Juarez, however, to be paid by the Higginbothams and the duty into the United States to be paid by them. For these services Mollohan was to receive the sum of Twenty-three thousand Dollars ($23,000.00) to relinquish all interests arising under the contract then existing between he and the two Higginbotham Brothers. This contract appears on pages 30 and 31 of the statement of facts and by reference is made a part hereof. This latter contract was never carried out and

by the mutual consent of the parties thereto was finally abandoned.

"Shortly after the written contract of the 9th day of March, 1927, was abandoned by mutual consent, J. M. and R. W. Higginbotham entered into negotiations with H. D. Mollohan to terminate the rights of the said Mollohan with reference to all the property in Mexico covered by said contracts. These negotiations were largely conducted by J. Lanham Higginbotham the son of J. M. Higginbotham, and he was fully authorized to take any and all steps he thought necessary to bring about a settlement and of all his acts and statements to that end the said R. W. and J. M. Higginbotham were affected with notice.

"In June or July, 1927, J. M. Higginbotham, accompanied by Lanham Higginbotham came to El Paso, Texas, for the purpose of arriving at a settlement with H. D. Mollohan. Many offers and counter offers were made and rejected by the parties. In a comparatively short time J. M. Higginbotham left El Paso, leaving the negotiations in charge of his son, Lanham; leaving with Lanham a blank non-negotiable note signed by the said J. M. Higginbotham. The purpose of the note was that same should be filled out and delivered by Lanham to Mollohan if a settlement was effected. The purpose of making the note non-negotiable was to the end that in certain contingencies that the note for $12,466.66 executed by Mollohan to J. M. and R. W. Higginbotham described in the contract of the 10th day of December, 1924, heretofore referred to, might be plead as an off-set to such contemplated note to Mollohan.

"After J. M. Higginbotham left El Paso, negotiations continued between Mollohan and Lanham Higginbotham. It was finally agreed that to facilitate a settlement there should be a complete audit of the books of the business conducted in Mexico by Mollohan, and acting with the consent and acquiescence of Lanham Higginbotham, Mollohan wired to the bookkeeper at Durango to bring all the books and his (Mollohan's) private contracts to Juarez, Mexico, for the purpose of having same audited. After this telegram was sent, Lanham Higginbotham clandestinely took the train for Mexico, met the bookkeeper enroute, took possession of all the books and papers and retained them in Mexico. Acting personally and through employees he sought to obtain possession of all of the property in Mexico. Mollohan, shortly thereafter followed Lanham Higginbotham to Mexico where sundry judicial proceedings were instituted by the parties and each had dealings with the Civil and Military authorities.

"On or about the 5th day of October, 1927, H. D. Mollohan borrowed $7,250.00 from the State National Bank of El Paso, Texas. As collateral to this note, he deposited with said bank, one or more notes in the sum of ten thousand dollars, purporting to be signed by J. L. Higginbotham, and likewise a contract purporting to be signed by J. M. Higginbotham, R. W. Higginbotham and H. D. Mollohan. Among other things, this contract purports to guarantee the payment of nine promissory notes payable to Mollohan, the first eight in the principal sum of ten thousand dollars and the ninth in the principal sum of four thousand dollars. A photographic copy of this purported contract is sent up under separate cover with the statement of facts, it is Exhibit 10, and reference is made to such exhibit and same is made a part of these findings and likewise a photographic copy of said purported notes are sent up as original Exhibits, being Exhibits 4 to 9 inclusive, and reference is made to such Exhibits.

"The note or notes placed with the State National Bank as collateral was not paid when same by its terms matured and one or more times Mollohan substituted other notes of the series.

"The State National Bank on or about March 4, 1928, sent its Assistant Cashier, George Matkin, to the City of Dallas to collect the note or notes held by it as collateral; he saw and talked with R. W., J. M. and Lanham Higginbotham and was advised by them that such notes were forgeries and obtained from them affidavits to that effect, with the intention that same should be placed before the grand jury of El Paso County. Same were presented to the grand jury and Mollohan was subsequently indicted for forgery by the grand jury. The Higginbothams, particularly Lanham and his father, J. M., gave aid to the State or the District Attorney in the prosecution of the indictments against Higginbotham; they obtained the services of a handwriting expert and made same available to the District Attorney paying therefor out of their own funds.

"The various indictments in El Paso County charged forgery or some related offense. The said prosecutions have all been terminated and Mollohan was not convicted in any of them. The evidence makes it an issuable fact for the court or jury on final trial as to whether or not these notes and the guaranty thereof were delivered to the plaintiff Mollohan's

brother by J. Lanaham Higginbotham for delivery to the plaintiff H. D. Mollohan. In other words, under the evidence the issue is raised that J. Lanham Higginbotham delivered the instruments in question to plaintiff Mollohan, knowing that the signatures thereon were not the actual signatures of said parties; that this was done with the intention of obtaining the indictment of the said Mollohan. That thereafter, in carrying out such purpose, affidavits were made by defendants J. Lanaham Higginbotham and J. M. Higginbotham and R. W. Higginbotham, now deceased; that as a result of such acts and in pursuance of such unlawful combination, various criminal prosecutions were instituted in El Paso County, Texas.

"In other words, if the defendants are guilty of malicious prosecution of the plaintiff, their acts were performed in El Paso County, Texas, in that same were intended to take effect in El Paso County and same did take effect in El Paso County.

"The evidence raises a prima facie cause of malicious prosecution taking place in El Paso County, Texas. The evidence of the defendant is insufficient to conclusively rebut such prima facie case. Taking the evidence as developed upon the hearing of the plea of privilege, a court would not be warranted in setting aside a verdict in favor of either the plaintiff or the defendants, as against the preponderance of the evidence.

"The evidence is sufficient to raise the issue of conspiracy substantially as alleged by plaintiff, and a finding either way thereon under the evidence introduced on the hearing of the plea, could not be disturbed as against the preponderance of the evidence. If conspiracy there was, a preponderance of the evidence establishes overt acts in pursuance thereof in El Paso County."

"Conclusions of Law.

"Where venue depends upon the question of the existence or non-existence of a cause of action asserted in the petition, the establishment prima facie of the cause of action alleged, unless conclusively rebutted, determines the venue to be as laid in the petition.

"Venue in a suit including an asserted cause of action for conspiracy to injure the plaintiff in his property rights is properly laid where any act in pursuance of the common design was performed by any one of the conspirators or by any other person at their instigation."

Appellant's brief contains six assignments of error. The first one questions the correctness of the court's action in overruling the pleas of privilege, and the remaining five relate to and attack the findings of fact by the trial court.

The statement of facts contains over 300 pages of testimony, and to attempt to quote the different parts of it relative to the making of a prima facie case by appellee would be to render this opinion lengthy beyond reason. We have, however, given the statement of facts careful reading, and have reached the conclusion that the evidence is sufficient, prima facie, to support the findings of the trial court as to the issues of conspiracy and malicious prosecution.

The objections now urged as to the sufficiency of the controverting affidavit are without merit.

The judgment is affirmed.